UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JERRY COURVILLE | CASE NO. 6:18-CV-01133 |
| VERSUS | JUDGE SUMMERHAYS |
| LIFE INSURANCE CO OF NORTH AMERICA ET AL | MAGISTRATE JUDGE WHITEHURST |

**REASONS FOR DECISION**

Presently before the Court is the Defendants' Motion for Judgment on the Administrative Record [doc. 39]. For the following reasons, the Court finds that Defendants are entitled to judgment dismissing each of the claims raised in the Complaint.

**I.**
**BACKGROUND**

This Complaint was filed by plaintiff, Jerry Courville, pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The parties have stipulated that the case is covered by ERISA. Plaintiff asserts that Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA.

Plaintiff was employed as a shop manager for Schlumberger Technology Corporation ("STC") at the time of his disability.[1] In 2015, Plaintiff began experiencing neck and back pain

---

[1] Complaint [doc.1], paragraph VI.

1

and in July of 2015, Plaintiff underwent a three-level fusion in his cervical spine. Three months later, Plaintiff underwent a one-level back surgery.[2]

The plan at issue, called the Schlumberger Group Welfare Benefits Plan (the "Plan"), includes a disability benefits component.[3] The Plan is sponsored and funded by STC and administered by the Administrative Committee of the Schlumberger Group Welfare Benefits Plan (the "Administrative Committee").[4] STC contracted with Life Insurance Company of North America ("LINA") only to serve as the claims administrator of the Plan, and LINA does not insure the Plan.[5] Benefits under the Plan are paid by STC or the trust for the Plan if LINA, acting as claims administrator, determines in its sole discretion that a claim should be paid under the terms of the Plan.[6] The Plan expressly provides that LINA has been delegated the discretionary authority and responsibility for determining eligibility for benefits under the Plan, and, in processing claims and appeals, LINA has the discretionary authority to interpret the provisions of the Plan and to interpret the facts and circumstances of benefit claims.[7] The Plan provides benefits for both short-term and long-term disability for eligible employees.[8] After being approved for and exhausting short-term disability ("STD") benefits, an employee is qualified to receive LTD if, after submitting a separate claim, LINA determines that the employee continues to meet the requirements of the Plan.[9] For purposes of STD benefits and initially receiving LTD benefits under the Plan, an employee is "Disabled" if the employee is: (1) unable to perform the normal duties of his job due to an illness or injury and (2) receiving Appropriate Care and Treatment for that injury or illness.[10]

---

[2] Id. at paragraph IX-X.
[3] Administrative Record [doc. 32] ("AR") 838,868.
[4] AR 838-839, 868-869.
[5] Id.
[6] AR 836-839, 866-869.
[7] Id.
[8] AR 822, 852.
[9] AR 827, 834, 857, 864.
[10] AR 844, 874.

2

After receiving 78 weeks of disability benefits, an employee is "Disabled" if the employee is (1) unable to perform the duties of any occupation for which he is reasonably suited due to his education, training or experience and (2) receiving Appropriate Care and Treatment for that injury or illness.[11]

Plaintiff first applied for STD benefits under the Plan based on back pain for which he was treated with surgery.[12] Plaintiff's STD claim was approved by LINA beginning on July 20, 2016.[13] After exhausting the 26 weeks of available STD benefits under the Plan, Plaintiff applied for LTD benefits.[14] LINA gathered information from Plaintiff and his treating physicians, reviewed Plaintiff's claim, and approved his LTD claim on January 27, 2017, with benefits beginning on January 18, 2017—after STD benefits ended.[15] In approving Plaintiff's LTD claim, LINA explained that it would continue to monitor his eligibility for benefits and would periodically request updated information to confirm that he continued to meet the requirements of the Plan.[16]

On August 11, 2017, LINA advised Plaintiff that under the Plan, the applicable definition of "Disabled" would change from "unable to perform the normal duties of your job" to "unable to perform the duties of any occupation . . . for which you are reasonably suited due to your education, training or experience" on January 17, 2018, based on his having received 78 weeks of disability benefits.[17] LINA advised Plaintiff that it would begin to review his eligibility for continued benefits under the Plan.[18] Accordingly, on August 15, 2017, LINA requested copies of recent medical records and other information regarding Plaintiff's treatment from his physician, Dr. Lon

---

[11] Id.
[12] AR 603.
[13] AR 50, 603.
[14] AR 6-7.
[15] AR 6-38, 40-42.
[16] AR 40-42.
[17] AR 97-98.
[18] AR 97-98.

3

Barrone.[19] Receiving no response, LINA followed up with Dr. Barrone by letter on August 23, again requesting current information about Plaintiff's treatment.[20] Dr. Barrone responded by facsimile on August 25, 2017, sending a physical ability assessment and records from Plaintiff's earlier treatment covering January through July 2017.[21] The physical ability assessment noted that Plaintiff would be at maximum medical improvement by December 2017 and noted various physical limitations, which Dr. Barrone had assessed.[22] After reviewing the information provided by Dr. Barrone, LINA requested any office visit notes or other records of Dr. Barrone's treatment of Plaintiff since August 1, 2017.[23] Dr. Barrone responded by facsimile on October 30, reporting that he had no records related to treatment of Plaintiff since August 1, 2017.[24] On November 7, 2017, LINA requested that Dr. Barrone explain some of the limitations that he described in the physical ability assessment that he had completed and sent to LINA because the limitations did not appear to be supported by the medical records that had been submitted.[25] LINA also asked that Dr. Barrone include quantifiable exam and diagnostic evidence to support the restrictions.[26] In response, on November 15, 2017, Dr. Barrone faxed a second physical ability assessment form, which he had completed.[27] Dr. Barrone's second physical ability assessment differed from the first assessment in the limitations which he noted, and it was based on his last having examined Plaintiff on July 27, 2017.[28]

---

[19] AR 107-112.
[20] AR 113-119.
[21] AR 150-174.
[22] AR 151.
[23] AR 141-144.
[24] AR 145-147.
[25] AR 175-178.
[26] Id.
[27] AR 202-208.
[28] Id.

4

On November 10, 2017, Dr. Anthony Watson, a licensed physician who is a board-certified orthopedic surgeon, reviewed the medical records and other information submitted to LINA and opined that the restrictions assessed by Dr. Barrone were not supported by Plaintiff's known medical information and not medically necessary.[29] LINA also performed a transferable skills analysis that identified at least two occupations that Plaintiff could perform, including his own job.[30] On November 16, 2017, LINA notified Plaintiff that it had completed its review of his eligibility for continued benefits and determined that he was no longer disabled within the meaning of the Plan.[31] For that reason, LINA informed Plaintiff that it was unable to continue paying benefits beyond November 17, 2017.[32] LINA explained that it had reviewed the medical records and other information it had received, including information from Dr. Barrone, but the records did not show that Plaintiff was functionally limited to the extent that he could not perform the normal duties of his job.[33] Plaintiff was also notified on November 14, 2017, that his claim for Social Security disability benefits, which LINA assisted him in submitting, was denied because the Administration determined that his reported condition did not prevent him from working.[34]

By letter dated February 5, 2018, Plaintiff's counsel notified LINA that he had been retained and requested the documents LINA had relied on in making its determination that Plaintiff did not meet the requirements of the Plan after November 17, 2017.[35] Plaintiff's counsel also sent LINA a letter dated April 12, 2018, advising of the intent to appeal LINA's benefit determination and again requesting the documents that LINA relied on in making its benefit determination.[36] On

---

[29] AR 183-184.
[30] AR 186-187.
[31] AR 188-191.
[32] Id.
[33] Id.
[34] AR 194-198.
[35] AR 199-201.
[36] AR 609-612.

May 1, 2018, LINA notified Plaintiff's counsel that it had received his letters but that it could not release any information to him until it received an authorization from Plaintiff.[37] By letter dated May 1, 2018, Plaintiff's counsel requested an appeal of LINA's denial of continued LTD benefits under the Plan.[38] Along with his request for an appeal, Plaintiff's counsel also submitted additional medical records and information to LINA for consideration as part of the appeal.[39] On May 9, 2018, LINA advised Plaintiff that it had received a request for an appeal of its benefit determination but advised that it could not communicate with his counsel without his written consent.[40] Later the same day, Plaintiff sent LINA a copy of his engagement with his counsel.[41] On May 15, 2018, Plaintiff, through his counsel, supplemented his appeal with additional medical records and information.[42] On May 23, 2018, LINA sent Plaintiff, though his counsel, a copy its claim file related to his LTD claim.[43] LINA also acknowledged Plaintiff's request for an appeal by letter dated May 30, 2018.[44] In connection with Courville's appeal, on June 12, 2018, Dr. Daniel Gutierrez, a licensed physician who is a board certified neurosurgeon, Dr. Bryan Frentz, a licensed physician who is a board certified orthopedic surgeon, and Dr. Weiran Wu, a licensed physician who is a board certified psychiatrist, all reviewed the medical records and other information submitted to LINA and opined that Plaintiff was not functionally limited and that no restrictions were medically necessary.[45] As part of his review, Dr. Frentz called Dr. Barrone to discuss his opinion but received no response.[46] On June 14, 2018, LINA notified Plaintiff, through his counsel,

---

[37] AR 613-614.
[38] AR 211-569.
[39] Id.
[40] AR 622-623.
[41] AR 628-632.
[42] AR 570-602.
[43] AR 633-634.
[44] AR 635-636.
[45] AR 637-646.
[46] AR 644.

that it had completed its review of his appeal and that it was denying his claim for LTD benefits beyond November 17, 2017, on the grounds that the records submitted did not support functional deficits that would prevent Plaintiff from performing the normal duties of his job.[47] On July 16, 2018, Plaintiff, through his counsel, requested copies of the documents LINA relied on in making its benefit determination.[48] On September 12, 2018, LINA sent Plaintiff's counsel a complete copy of its LTD claim file.[49]

## II.
## LAW

The Supreme Court has held that a de novo standard of review applies to adjudication of ERISA benefit disputes unless the plan documents give "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 111-115 (1989). If the court determines that the plan administrator has discretionary authority to determine eligibility for benefits or to construe the terms of the plan, courts then base their review of both the legal and factual aspects of the administrator's decision under an abuse of discretion standard. *Vercher v. Alexander & Alexander Inc.,* 379 F.3d 222, 226 (5th Cir. 2004). Under this standard, a court reviews the administrator's decision to determine if it was arbitrary and capricious, and affirms the administrator's decision if it is supported by substantial evidence. *Schexnayder v. Hartford Life & Accident Ins. Co.,* 600 F.3d 465, 468 (5th Cir. 2010) (citing *Holland v. Int'l Paper Co. Retirement Plan,* 576 F.3d 240, 246 (5th Cir. 2009)). LINA has discretionary authority to interpret the terms of the policy and to make benefit eligibility determinations.[50] The only issue, therefore, is whether

---

[47] AR 647-650.
[48] AR 653-655.
[49] AR 656.
[50] AR 836-839, 866-869.

7

the denial of benefits was arbitrary and capricious. Review of this question is limited to the record that was before LINA at the time it made its final claim decisions.[51] If LINA's decision "is supported by substantial evidence and is not arbitrary or capricious, it must prevail."[52] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[53] LINA's decision can only be deemed arbitrary "if made without a rational connection between the known facts and the decision or between the found facts and the evidence."[54] Under the abuse of discretion standard, a court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness — even if on the low end."[55]

## III.
### ANALYSIS

Plaintiff argues that LINA's decision to deny LTD benefits was arbitrary and capricious because there is evidence in the record indicating that Plaintiff continues to suffer pain and limitations from his back injury and because Plaintiff's treating physician, Dr. Baronne declared the Plaintiff to be disabled. However, as the Fifth Circuit has noted, "the job of weighing valid, conflicting professional medical opinions is not the job of the courts; that job has been given to the administrators of ERISA plans."[56] ERISA does not require that plan administrators "accord special deference to the opinions of treating physicians."[57] Nor does ERISA "impose a heightened

---

[51] See *Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 299-300 (5th Cir. 1999)(abrogated on other grounds).
[52] *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)).
[53] *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002)
[54] *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)
[55] *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389 (5th Cir. 2007).
[56] *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d at 401.
[57] *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003).

8

burden of explanation on administrators when they reject a treating physician's opinion."[58] The Court has reviewed the entire administrative record and finds that substantial evidence supports LINA's decision. The administrative record reflects that LINA considered not only the form submitted by Dr. Baronne but also the various test results and medical evidence submitted.[59] LINA even requested additional information from Dr. Baronne to support his conclusion that Plaintiff was disabled but did not received sufficient evidence to support that conclusion.[60] The mere fact that the record contains some evidence to support Plaintiff's claim for disability is insufficient to establish that LINA abused its discretion. Numerous courts have held that there is no abuse of discretion when there is evidence in the record to support a claim of disability when there is also evidence supporting a denial of benefits.[61]

The Court finds that the decision of LINA was supported by substantial evidence and was not arbitrary and capricious. Accordingly, LINA is entitled to judgment in its favor.

## IV.
### PLAINTIFF'S CLAIM UNDER LA. R.S. 22:990

Plaintiff also claims that the definition of disability contained in the policy is overly broad and in violation of under La. R.S. 22:990. The Supreme Court has recognized that ERISA's civil enforcement provision—Section 502(a), 29 U.S.C. § 1132(a)—has complete preemptive force. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987), abrogated in part on other grounds by *Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003); *Rush Prudential HMO, Inc. v. Moran*,

---

[58] *Id.*
[59] AR 637-646.
[60] AR 141-144.
[61] See *Killen v. Reliance Standard Life Ins. Co.*, 776 F. 3d 303, 308–09 (5th Cir. 2015) (holding that "[w]hile there is evidence in the record to support [plaintiff's] claim for disability . . . there is also more than enough evidence supporting a denial"); *McDonald v. Hartford Life Grp. Ins. Co.*, 361 F. App'x 599, 610 (5th Cir. 2010) ("While the record does contain some evidence indicating that [plaintiff] suffers from some permanent health issues, [defendant's] decision to deny benefits also finds support in the record. The fact that [defendant's] support comes from reviewing physicians does not render its decision arbitrary or capricious.").

9

536 U.S. 355 (2002). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).

Plaintiff cites the case of *Benoit v. Liberty Life Assur. Co.*, 17-00641, 2017 U.S. Dist. LEXIS 199477 (W.D. La. 10/6/17) to support the proposition that La. R.S. 22:990 was not preempted by ERISA. However, while Benoit held that La. R.S. 22:990 was not preempted by ERISA, that ruling also held that the claim asserted under the corollary state statute which provided a basis for relief had no merit. Here, Plaintiff does not actually assert a claim for relief under state law but merely argues that the definition of disability is overly broad in violation of that state provision. It is unclear what action Plaintiff requests be taken based upon this violation.

Further, even if Plaintiff had asserted a claim under ERISA based on the plan's alleged noncompliance with La. R.S. 22:990, such a claim would fail as a matter of law. La. R.S. 22:990 only regulates "individual or group disability loss of income polic[ies]." La. R.S. 22:851 makes clear "the applicable provisions of this Chapter shall apply to insurance . . . ." However, there is no insurance policy that applies to the disability benefits that Plaintiff seeks, let alone one that would be regulated by the Louisiana Insurance Code. The Plan is self-funded, not insured. LINA does not insure benefits under the Plan, but merely acts as a claims administrator for the Plan under its services contract with STC. Benefits that LINA determines are owed under the Plan are paid by STC or the trust for the Plan.

Accordingly, to the extent that Plaintiff is asserting a claim under Louisiana law, that claim is DENIED.

# V.
## PLAINTIFF'S CLAIM FOR STATUTORY PENALTIES

Plaintiff has asserted a claim for "penalties for failure to produce required documentation."[62] 29 USC 1132(c) provides for penalties when an administrator's refuses to supply required information:

> Any administrator…(B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such beneficiary in the amount of up to $100 a day from the date of such failure or refusal.

Plaintiff asserts that LINA failed to produce the plan documents when requested and that they were not produced until January 23, 2019. When Plaintiff's claim for benefits was denied, he employed counsel who subsequently sent numerous requests for documentation, including the plan documents. LINA initially requested a release from Plaintiff or documentation reflecting that counsel was in fact representing Plaintiff. Subsequently, LINA provided the documentation relating to their denial of benefits. The Court has reviewed the various requests for documentation and the responses. It does not appear to the Court that LINA was in any fashion refusing to provide the requested documentation. The requests from Plaintiff's counsel focused on documentation supporting the denial of benefits and LINA did provide that documentation. It appears to the Court that the plan documents themselves were simply overlooked. Further, there does not appear to be

---

[62] Complaint [doc. 1] at paragraph XVIII.

any prejudice to Plaintiff due to the delay in receiving the plan documents.[63] Finally, and most importantly, the Court can only impose statutory penalties upon the plan administrator. In this instance, LINA is not the actual plan administrator, the Administrative Committee is the plan administrator and they are not named as a defendant in this action. Accordingly, even if the Court chose to exercise its discretion to award statutory penalties, the proper party is not before the Court. Plaintiff's request for statutory penalties is DENIED.

## VII.
### THE ADMINISTRATIVE RECORD

Plaintiff makes the argument that the administrative record is not complete as it does not contain the January 23, 2019 email in which counsel for LINA transmitted a copy of the plan documents. However, the administrative record, by its very nature, is the record which was before the plan administrator when the decision regarding benefits was made. That email was not part of that record and it was correct not to include it. Further, the Court has determined that no statutory penalties will be imposed so the date upon which the documents were transmitted is a necessary part of the record.

## VIII.
### CONCLUSION

For the foregoing reasons, the Court finds that Defendants are entitled to judgment dismissing each of Plaintiff's claims. Accordingly, the Defendants' Motion for Judgment on the Administrative Record [doc. 39] is GRANTED and the claims of Plaintiff are DISMISSED. Defendants made a request for attorney fees pursuant to 29 U.S.C. Section 1132. The Court finds

---

[63] *Paris v. Profit Sharing Plan for Emp. of Howard B. Wolf, Inc.*, 637 F.2d 357 (5th Cir. 1981) (without a showing of prejudice for the alleged failure to provide information, the court could not find that the district court abused it's discretion in not imposing statutory penalties.)

no grounds in the record to award attorney fees or costs. Accordingly, that request is DENIED. A separate judgment in conformity with the foregoing reasons will be entered into the record.

THUS DONE in Chambers on this 8th day of November, 2019.

                                           Robert R. Summerhays
                                           United States District Judge